**70**

STATE of Tennessee, on Relation of the COMMISSIONER, DEPARTMENT OF TRANSPORTATION, For and On Behalf of SAID DEFENDANT, and Bureau of Highways, Plaintiff-Appellee,

v.

Judd HEADRICK and wife, Robbie Headrick, et al., Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Nov. 15, 1983.

Permission to Appeal Denied by Supreme Court March 19, 1984.

Erma G. Greenwood, Donelson M. Leake, Knoxville, for defendants-appellants; Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, of counsel.

Wayne K. Houser, Jr., Asst. Atty. Gen., Knoxville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

FRANKS, Judge.

In this condemnation proceeding, the trial judge entered judgment on a jury verdict in favor of property owners for $120,900.00 for 21.6 acres taken in fee, with a drainage easement and incidental damages to the remaining property. Owners have appealed.

This appeal is primarily based on two actions of the trial court. The court, responding as to the state's motion *in limine*, ordered: "[T]hat the Defendants shall not introduce any evidence regarding the filing of a corridor plan with the Metropolitan Planning Commission of Knox County in August, 1960". During the trial, the court refused to permit the testimony of property owners' expert witness, Beeler Thompson, to be placed in evidence.

The property owners insist they should have been permitted "to show that the value of the property involved in this condemnation proceeding had been depreciated before the taking because of the anticipation of the public improvement for which the

taking was made." They essentially argue they should have been allowed to introduce evidence that the property had been under a threat of condemnation since the state filed its corridor plan with the Metropolitan Planning Commission of Knox County in August of 1960, and "that the value of the property condemned had depreciated because of the action of the condemning authority in filing a Corridor map which action prevented the land owner from obtaining building permits."

The property owners argue they should be compensated for so-called "condemnation blight". For discussion of this theory of recovery, *see City of Buffalo v. George Irish Paper Co.*, 31 App.Div.2d 470, 299 N.Y.S.2d 8 (1969).

 Assuming, *arguendo*, the property owners' contentions are correct, no factual basis was established by the evidence to reverse the judgment of the trial court. The property owners assert that following the filing of the corridor map, they were unable to obtain building permits on their property and an industrial development had occurred in the area but stopped at their property line due to the threat of condemnation. These factual assertions cannot be inferred from the evidence. The son of the owners testified the land was being used as a cattle and hog farm at the time of taking "because we could not get no right to build any buildings", whereupon an objection was made and sustained to the testimony. As to the industrial development, there is evidence of industrial development in the area but there is no evidence to support the conclusion urged by the property owners. More importantly, the record is devoid of any evidence that any state action in the 1960's and continuing on to the actual date of taking, either increased or decreased the value of the owners' property or evidence of what the property owners describe in their reply brief as "depreciation in value of the property because of the project for which the State is acquiring the land should not be utilized to decrease the landowners' compensation."

 The landowners insist they should have been provided with "an opportunity to show that as a result of the precondemnation actions of the State, their property suffered a diminution in market value prior to the institution of the condemnation proceeding and the entry of the order of possession." We have searched the record and find no effort was made to tender evidence on the issues raised on appeal which the trial court ruled inadmissible. Evidence along the lines which the landowners insist should have been admitted and considered would be hypothetical in nature. Without such evidence being tendered into the record, we have no way of knowing whether such evidence more probably than not would have affected the judgment. *See* T.R.A.P., Rule 36. The property owners offered witnesses as to the fair market value of the land in view of its value for all available uses, which is the proper measure of just compensation in this jurisdiction. *Layne v. Speight*, 529 S.W.2d 209 (Tenn.1975).

As to the court's action in refusing to admit the testimony of witness, Beeler Thompson, the property owners argue:

> In all fairness, the land owners should have been permitted to introduce Mr. Thompson as a witness and certainly the trial could have been delayed long enough for the State to take his deposition.

On this issue, the record reveals that the trial court entered an order on April 23, 1982, which, in pertinent part, provides:

> It is, therefore, ORDERED that the Defendants, Judd Headrick and wife, Robbie Headrick shall produce their expert appraisal witnesses, Mr. Jeff Fletcher and Mr. Beeler Thompson, for the purpose of taking their discovery depositions within sixty (60) days from April 2, 1982.

At the trial of this cause on October 18, 1982, Thompson had not been discovered by the state and a motion was made to exclude his testimony. The following colloquy transpired:

MR. HOUSER: Your Honor, I guess it is our position, Julie and I discussed it, that if Mr. Beeler is going to testify, we want to take his deposition.

THE COURT: Do you want to talk to your people and see?

MS. GREENWOOD: As to whether or not he is going to testify?

THE COURT: Well, if he is going to testify, they want to take his deposition. Do you want to talk to Don a minute?

MS. GREENWOOD: If the Court please, we feel that we—

THE COURT: I don't understand why you didn't tell him you had it. In other words, you say that you knew it two weeks before and didn't tell him.

MS. GREENWOOD: No, Your Honor, I didn't really know until Saturday.

THE COURT: Well, you kept looking for a witness and you told him, so I don't see any reason why you would be looking for a witness after the 30-day period since you promised it to him. You promised him that you would furnish him a witness 30 days—

MR. HOUSER: Prior to trial.

THE COURT: —prior to trial.

MS. GREENWOOD: I certainly did promise him. Then the State, it was within that 30 days that the State backed out of its—

THE COURT: I don't know anything about the State backing out—

MS. GREENWOOD: Well, I do.

THE COURT: I don't know anything about the State backing out. Did you back out of anything?

MR. HOUSER: I didn't back out of anything. I have never said that we would stipulate, I've never said anything about—

MS. GREENWOOD: Mr. Houser didn't. That's absolutely true, but the State Attorney General did.

MR. HOUSER: The motion was heard September 17th. This is October 18th. That was 30 days—

THE COURT: I will exclude him and we'll go ahead. You may note your exception.

 The motion referred to was a motion *in limine* filed by the state, heretofore discussed, and does not expressly relate to whether or not Beeler Thompson would testify or the prior order of discovery. On the record, the court's order to compel discovery was violated and we find no abuse of discretion in refusing to permit the expert witness to testify. *See* T.R.C.P., Rule 37.

For the foregoing reasons, the trial court judgment is affirmed; the state's motion to supplement the record is overruled, and the cost of appeal is assessed to appellants.

SANDERS and GODDARD, JJ., concur.